ELBERT S. JEMISON et al., Appellants, *v.* THE CITIZENS'
SAVINGS BANK of Jefferson, Texas, Respondent.

Contracts of corporations are *ultra vires* when they involve adventures
outside of and not within the scope or powers given by their charter.

Speculative contracts entered into for the sale or purchase of stock or
other property by a savings bank at the stock board or elsewhere, sub-
ject to the hazard and contingency of gain or loss, unless authorized by
its charter, are *ultra vires*.

*It seems,* the defense of *ultra vires* is available to the corporation in all
cases of executory contracts, unless it would defeat justice or accom-
plish a legal wrong.

One dealing with a corporation is chargeable with notice of its powers and
is bound to know the extent of the authority of its agents.

A corporation acting as the agent of an undisclosed principal, and so
liable as principal, is entitled, when this liability is sought to be enforced,
to all the rights and privileges that the law would give to it, if in fact
it occupied the position of principal.

P., the cashier of defendant, a savings bank and trust corporation, organ-
ized under the laws of Texas, as such cashier, entered into the buying
and selling of cotton for future delivery through the plaintiffs, who
were commission merchants and members of the Cotton Exchange of
New York city. Plaintiffs were advised that the orders were given by
defendant for its customers, whose names, however, were not disclosed.
The speculation resulted in a loss. Defendant's charter did not embrace
the power to enter into speculative undertakings. In an action brought
against defendant to recover the amount of said loss, *held,* that, assum-
ing P. possessed all the authority to act in the premises that defendant's
directors had power to give, the contracts were *ultra vires,* and defend-
ant was not liable.

The cotton was purchased by the plaintiffs in their own name, and there
had been no delivery thereof, nor transfer of the title thereto, to defend-
ant. *Held,* that the contracts had not been so executed on the part of the
plaintiffs as to estop defendant from setting up the defense of *ultra vires.*

*Whitney Arms Co.* v. *Barlow* (63 N. Y. 62); *Parish* v. *Wheeler* (22 id.
494), distinguished.

(Argued June 16, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made January 30, 1888, which affirmed a judgment in favor of
defendant entered upon a decision of the Special Term dis-
missing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis C. Barlow* for appellant. "Parsons, Cashier," had power to bind the defendants, if the latter had power to do the act, or was estopped from denying such power. (*Beveridge* v. *M. E. R. Co.*, 112 N. Y. 1, 22, 23; *Risley* v. *R. R. Co.*, 1 Hun, 202; 62 N. Y. 240, 245; *Phillips* v. *Campbell*, 43 id. 271; *Parish* v. *Wheeler*, 22 id. 504.) The acts of "Parsons, Cashier," were those of the corporation, even though the acts may have been *ultra vires* of the corporation. (Code Civ. Pro. § 522; *Cook* v. *Barr*, 44 N. Y. 156, 158; *Fogg* v. *Edwards*, 20 Hun, 90; *Coats* v. *O'Donnell*, 94 N. Y. 168; 94 id. 176; *Hascall* v. *Assn.*, 5 Hun, 155, 156; *Beers* v. *P. G. Co.*, 14 Barb. 358, 360, 361; *Conover* v. *Ins. Co.*, 1 N. Y. 292; *F. S. Inst.* v. *Bank*, 80 id. 168, 169; Morse on Banking [2d ed.], 91, 92; *Bank of Vergennes* v. *Warren*, 7 Hill, 91; *Bank* v. *P. Co.*, 6 Hun, 72; *Lovett* v. *S. M. Co.*, 6 Paige, 60; *Plumb* v. *Milk*, 19 Barb. 74.) The acts in question were not *ultra vires* of the defendants, as was assumed below. (*Van Leuven* v. *Bank*, 54 N. Y. 671; *Yerkes* v. *Bank*, 69 id. 382, 388; *Smedes* v. *Bank*, 20 Johns. 372, 380; 3 Cow. 362.) When a contract or transaction is an executed one, and the defendant has got the money or the property of plaintiff, the defense of *ultra vires* will not prevail, because the defendant is estopped from setting it up. (*W. A. Co.* v. *Barlow*, 63 N. Y. 62; *Parish* v. *Wheeler*, 22 id. 494; *A. Bank* v. *Savery*, 82 id. 307; *N. Bank* v. *Jones*, 95 id. 123; *R. Co.* v. *Roach*, 97 id. 381; *Starin* v. *Edson*, 112 id. 215; *Mayor, etc.*, v. *Someborn*, 113 id. 426; *Mayor, etc.*, v. *Huntington*, 114 id. 633; *Bank* v. *Pfeiffer*, 108 id. 254; *In re McGraw*, 111 id. 105, 106; *Ward* v. *Johnson*, 95 Ill. 215, 240; *Hurd* v. *Green*, 17 Hun, 335.) The acts in question were neither *mala prohibita* or *mala in sese*. (2 Abb. Law Dict. 71; *Bigelow* v. *Benedict*, 70 N. Y. 206; *Hibblewaite* v. *McMoring*, 5 M. & W. 462; *W. A. Co.* v. *Barlow*, 63 N. Y. 68; *S. L. Co.* v. *Helmer*, 77 id. 64; *Parish* v. *Wheeler*, 22 id. 507.) The stat-

ute of this state, which prohibits "bets, wagers and stakes," does not make these transactions *mala prohibita.* (*O' Toole* v. *Garvin,* 1 Hun, 92; *Storey* v. *Solomon,* 6 Daly, 531; *Harris* v. *Tumbridge,* 83 N. Y. 99; 2 R. S. [6th ed.] 918, § 26; *Lehman* v. *Strassberger,* 2 Woods, 554; *Knight* v. *Chambers,* 15 C. B. 562; *Rosewarn* v. *Billings,* 15 C. B. [N. S.] 316; *Jessop* v. *Lutwyche,* 10 Exch. 614; *Bigelow* v. *Benedict,* 70 N. Y. 202; *Kingsbury* v. *Kirwan,* 77 id. 612; 11 J. & S. 451; *Roundtree* v. *Smith,* 108 U. S. 276.) The defense that the defendants were not bound because they were acting as agents for other persons, is not sustained. (*Priest* v. *Nichols,* 116 Mass. 401; *Midland R. R. Co.* v. *Bromley,* 17 C. B. [N. S.] 382; *Baulec* v. *R. R. Co.,* 59 N. Y. 366; *Avery* v. *Bowden,* 6 E. & B. 972, 973; *McMahon* v. *Lennard,* 6 H. L. Cas. 992; *Cotton* v. *Wood,* 8 C. B. [N. S.] 566, 572; *Mills* v. *Hunt,* 20 Wend. 431, 443; *McComb* v. *Wright,* 4 Johns. Ch. 669, 670; *Morrison* v. *Currie,* 4 Duer, 79; *Holt* v. *Ross,* 54 N. Y. 475; *Parker* v. *Winslow,* 7 El. & Bl. 945; *Tanner* v. *Christian,* 4 id. 591; *Newton* v. *Ellis,* 5 id. 121; *Jones* v. *Littledale,* 6 Ad. & El. 490; Story on Agency [9th ed.], §§ 269, 270.)

*Benjamin H. Bristow* and *William D. Guthrie* for respondent. A speculation in cotton futures would involve an unauthorized exercise of corporate powers ·by the defendant as a savings bank. (*Leslie* v. *Lorillard,* 110 N. Y. 519, 532; *Huntington* v. *S. Bank,* 96 U. S. 388, 393; *Thomas* v. *R. R. Co.,* 101 id. 71, 82, 83, 86; *Sistare* v. *Best,* 88 N. Y. 527; *People* v. *M. & T. S. Inst.,* 92 id. 7, 9; *N. Bank* v. *Jones,* 95 id. 115, 120, 122; *Smith* v. *Bromley,* Doug. 670; *Riggs* v. *Palmer,* 115 N. Y. 506, 511; *Knowlton* v. *C. & E. S. Co.,* 57 id. 518, 528; *Dent* v. *Ferguson,* 132 U. S. 50, 65.) Parsons, the defendant's cashier, had no authority or power as such agent to bind the savings bank in these transactions and pledge its funds to reimburse any losses the plaintiffs might sustain. (*Alexander* v. *Cauldwell,* 83 N. Y. 480, 485; *Davis* v. *O. C. R. R. Co.,* 131 Mass. 258; *Hoyts* v. *Thompson,* 19 N. Y. 207; *Relfe* v. *Rundle,* 103 U. S. 222; *Leonard* v. *A. Ins. Co.,* 97 Ind. 299;

*Sistare* v. *Best*, 88 N. Y. 527, 533; *People* v. *M. & T. S. Inst.*, 92 id. 7, 9; *Greeley* v. *N. S. Bank*, 63 N. H. 145; *Commonwealth* v. *R. S. Bank*, 133 Mass. 16, 20.) The Citizens' Savings Bank was not bound by Parsons' acts, and is not estopped from so asserting. (*Marsh* v. *Fulton County*, 10 Wall. 676; *R. Co.* v. *K. B. Co.*, 131 U. S. 371, 389; *Bateman* v. *Mayor, etc.*, 3 H. & N. 340.) There is no exception or arbitrary rule in the law of agency as applied to a corporation which would make an unauthorized contract of its agent binding on it merely because executed by the other contracting party. (*Davis* v. *O. C. R. R. Co.*, 131 Mass. 258, 260.) To uphold the plaintiffs' claim would not be to prevent, but to accomplish a legal wrong. (95 N. Y. 122.) The defendant savings bank cannot be held liable because it was acting as agent for an undisclosed principal. (*Argersinger* v. *MacNaughton*, 114 N. Y. 535, 540; *Hough* v. *Manzanos*, 4 Ex. Div. 164; *Ogden* v. *Hall*, 40 L. T. [N. S.] 751.)

Haight, J. The plaintiffs were commission merchants and members of the Cotton Exchange of the city of New York. The defendant was a savings bank and trust corporation organized under the laws of Texas.

This action was brought to recover commissions, and for money claimed to have been expended for the defendant on the purchase and sale of cotton futures.

The defense was that the defendant, as a savings bank and trust corporation, had no power or authority to deal in the purchase and sale of cotton for future delivery, or in contracts for the purpose of speculation; that in the transaction alleged in the complaint it acted as the agent of one Albert P. Clopton, of Jefferson, Texas, and that the fact that he was the principal for whom the defendant acted was disclosed and well known to the plaintiffs prior to the time of the transaction referred to.

Whilst the fact distinctly appears from the correspondence between the parties that the defendant was acting for "good responsible customers," the General Term was of the opinion that this defense could not be sustained for the reason that the

defendant did not disclose the name of its principal at the time of the giving of the orders complained of for the purchase and sale of cotton futures. Had this defense been sustained, the principal and not the defendant, his agent, would have been liable. Without stopping to consider the evidence we shall assume that this defense was not established, and proceed to consider the question as to whether the defendant was liable as principal.

Transactions between the parties commenced in January, 1879, by a letter from J. H. Parsons, as cashier of the defendant, asking the plaintiffs the amount of margin and commission they required for the purchase of cotton futures. The plaintiffs answered, giving the amount, and this was followed by an order by telegraph from Parsons, as cashier, under date of February tenth, to buy 100 bales, June delivery, and on the same day he wrote the plaintiffs that the order was made for one of their customers who had deposited $250 as per their favor of the twenty-seventh ult. Other orders followed, the final result of which was a loss, to recover which this action was brought. At the time Parsons was the cashier of the defendant, possessing the powers and duties incident to the office under the charter, constitution and by-laws, having the general charge of the business of the bank and the supervision of the concern, and inasmuch as the answer alleges that the transactions referred to in the complaint were had between the plaintiffs and the defendant acting as agent, we shall treat him as possessing all of the authority to act in the premises that the directors of the defendant had the power to give. This brings us to the question whether or not the defendant had the power to make the orders in question. The defendant was incorporated and chartered in 1871 by an act of the legislature of the state of Texas, entitled "An Act to incorporate the Citizens' Savings Bank of Jefferson, Texas." The act, among other things, provides that "the general business and object of this corporation shall be to receive on deposit or in trust such sum or sums of money as may from time to time be offered therefor by tradesmen, merchants, clerks, laborers, servants and

others, to be repaid to such depositors when demanded, at such times, with such interest and under such regulations as the board of directors may from time to time prescribe;" and, also, "this corporation may loan money according to the Constitution and laws of the state, or may discount in accordance with bank usages, taking such security therefor, either real or personal, as the directors may deem sufficient. Said corporation shall have power to borrow money, buy and sell exchange, bullion, bank-notes, government stocks and other securities." The act further provides that the business of the corporation shall be managed by twelve directors.

Corporations are artificial creations existing by virtue of some statute and organized for the purposes defined in their charters. A person dealing with a corporation is chargeable with notice of its powers and the purposes for which it is formed, and when dealing with its agents or officers is bound to know the extent of their power and authority. A corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It follows that the plaintiffs must have known or are chargeable with knowledge of the corporate powers of the defendant and of the extent to which its cashier could bind the corporation. (*Alexander* v. *Cauldwell*, 83 N. Y. 480; *Hoyt* v. *Thompson*, 19 id. 207–222; *Relfe* v. *Rundle*, 103 U. S. 222–226; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 258–260; *Leonard* v. *A. Ins. Co.*, 97 Ind. 299.)

Savings banks are designed to encourage economy and frugality among persons of small means and are organized with restrictions and provisions intended to secure depositors against loss. Speculative contracts entered into for the sale or purchase of stock by a savings bank at the stock board or elsewhere, subject to the hazard and contingency of gain or loss, are *ultra vires*, and a perversion of the powers conferred by its charter. (*People, etc.*, v. *M. & T. S. Inst.*, 92 N. Y. 7–9; *Sistare* v. *Best*, 88 id. 527–531.) Contracts of corporations are *ultra vires* when they involve adventures or undertakings outside and not within the scope or power given by their charters. The acts under which they are organized

were framed in view of the rights of the public and the interests of the stockholders. As artificial creations they possess only the powers with which they were endowed. An act may be *malum in se* or *malum prohibitum*, or an act may not be immoral or prohibited by any statute, and still it may be in excess of the powers vested in the officers of a corporation, unauthorized and prejudicial to the stockholders. In either case the plea of *ultra vires* should prevail unless it would defeat justice or accomplish a legal wrong. (*Hungtington* v. *Savings Bank*, 96 U. S. 388; *Thomas* v. *R. R. Co.*, 101 id. 71; *Nassau Bank* v. *Jones*, 95 N. Y. 115; *Leslie* v. *Lorillard*, 110 id. 519.)

As we have seen, the defendant was chartered for the purpose of receiving on deposit or in trust such sums of money as may from time to time be offered by tradesmen, merchants, clerks, laborers, servants and others. It was authorized to loan these moneys according to the Constitution and laws of the state and to discount in accordance with bank usages, taking such security therefor either real or personal as the directors may deem sufficient. In additon thereto the defendant was given power to borrow money, buy and sell exchange, bullion, bank-notes, government stocks and other securities. The authority here given to buy and sell exchange, bullion, bank-notes, government stocks and other securities does not embrace or include speculative contracts in cotton futures any more than it does hay, oats, provisions or dry goods. The exchange, bullion, bank-notes, securities, etc., authorized are those of fixed value, current in the market and not subject to the control of speculators. Whilst the buying and selling of cotton to be delivered in the future, may not ordinarily be immoral or prohibited by any statute, it is not included in the powers given to the defendant by its charter. The transaction in question was prejudicial to its stockholders and tended to endanger and destroy the safeguards provided for the depositors. The stockholders and depositors had the right to have their funds invested in accordance with the provisions of the charter and the Constitution and laws of the state,

and in so far as this right was violated by the transaction in question it was a misappropriation of the funds and immoral.

It is contended that the defense of *ultra vires* is not available in this case, for the reason that the contract had been executed on the part of the plaintiffs and that the defendant is estopped from setting up the defense. In the case of *Whitney Arms Co.* v. *Barlow* (63 N. Y. 62) the plaintiff was a corporation organized for the purpose of manufacturing every variety of fire-arms and other implements of war, and all kinds of machinery adapted to the construction thereof. It entered into a contract with the American Seal Lock Company to manufacture and deliver 10,000 locks. The locks having been delivered, it was held that the contract was fully executed and that the plea of *ultra vires* would not prevail as a defense to an action brought to recover the contract price. We do not question the rule thus invoked. It has been repeatedly declared in other cases, as for instance, in *Parish* v. *Wheeler* (22 N. Y. 494), in which it was held that a railroad company having purchased and received a steamboat could be compelled to pay for it, although the power to purchase such boat was not included in its charter. But this doctrine has no application to executory contracts which are sought to be made the foundation of an action, or to contracts that are prohibited as against public policy or immoral. (*Nassau Bank* v. *Jones, supra; P. C. & S. L. R. Co.* v. *K. & H. B. Co.*, 131 U. S. 371–389.)

In the case at bar, the transaction as we have seen was not only immoral and in violation of the rights of the stockholders and depositors, but the defendant had received nothing by virtue of it. The cotton had been purchased by the plaintiffs in their own name, they taking title thereto and holding it upon the defendant's account. It was purchased under the rules of the Cotton Exchange of the city of New York in which the members doing business therein with other members act as principals and are liable as such. The most that can be claimed is that they held the cotton or the contracts therefor subject to the call or order of the defendant. There

had been no delivery of any cotton or property of any kind, or transfer of any title to such property to the defendant. If the steamboat had never been delivered to the railroad company so as to transfer the title thereto, or if the 10,000 locks had never been delivered to the American Seal Lock Company, very different questions would have been presented in the cases to which we have called attention. We consequently are of the opinion that under the circumstances of this case the defense of *ultra vires* is still available to the defendant.

The claim is made on behalf of the appellants that the defendant, in making the orders, acted as an agent for an undisclosed principal, and is, therefore, liable as such. If the defendant had no power to engage in the business as principal we do not understand what right it had to do so as an agent, but conceding that it was an agent and that the orders were made for and on behalf of Clopton then this action should have been brought against Clopton instead of the defendant. But it is claimed that the defendant neglected to disclose its principal at the time of making the orders and for that reason it is liable; but if it neglected to disclose its principal, so far as this action with the plaintiffs is concerned, it must be regarded as principal and liable as such, and if a principal then the question of *ultra vires* arises. The plaintiffs cannot sustain their action upon the two theories, for they lead in different directions. They cannot proceed upon the theory that the defendant was an agent, for the purpose of avoiding the question of *ultra vires*, and then upon the theory that the defendant was a principal, for the purpose of establishing a right to recover. Undoubtedly a person may in fact be an agent and still bind himself as a principal, but if he is proceeded against as a principal he is entitled to all of the rights and privileges that the law gives to a person occupying that position.

We consequently are of the opinion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.