(13 Misc. Rep. 349.)

# BRISAY v. STAR CO.

(Supreme Court, Special Term, Kings County. June, 1895.)

CORPORATION TO PUBLISH NEWSPAPER—AGREEMENT TO PAY LIFE INSURANCE
—ULTRA VIRES.

Under 1 Rev. St. p. 600, § 3, providing that no corporation shall possess
any corporate powers, except such as shall be necessary to the exercise
of its powers under its charter, a contract by a corporation organized to
publish a newspaper to pay a certain sum to the heirs of any person
killed, on whose body a coupon from its newspaper is found, is ultra vires;
there being no proof that deceased or his heirs parted with anything on
the faith of the contract, or that the corporation received any benefit there-
from.

Action by Catherine Ann Brisay against the Star Company on
an agreement to pay life insurance. A verdict for plaintiff was
directed, and defendant moves for a new trial. Motion granted.

L. J. Morrison, for plaintiff.

Edward Kent, for defendant.

RUMSEY, J. The defendant is a corporation of this state, or-
ganized under chapter 40 of the Laws of 1848, for the printing,
publishing, and selling of a newspaper. It was engaged in pub-
lishing a newspaper in the city of New York known as the "Morn-
ing Advertiser." At several times in the month of May, 1892, the
defendant caused to be published in the Morning Advertiser a no-
tice, of the essential parts of which the following is a copy:

"$500.00 Free Insurance.

"Friday, May 16th, 1892.

"The Morning Advertiser

"Will pay $500 to the legal heir or next of kin of any person who meets
death by accident while in the pursuit of ordinary vocation, provided that at
the time the person so dying has upon his or her body this coupon, dated as
above, or a copy of the Morning Advertiser of current date. This coupon
holds good for twenty-four hours, or from 3 a. m. of the date named to 3
a. m. of the following day. Satisfactory proofs of each claim must be pre-
sented within forty-eight hours at the business office of the Morning Ad-
vertiser. This insurance holds good to out of town purchasers and subscribers
24 hours after the arrival of the paper at their post office, in due course, by
mail or express."

On the 16th of May, 1892, the plaintiff's son, Thomas Brisay,
while engaged in his vocation of driver of a mineral wagon, fell
from the wagon, dead. In his pocket was one of these notices,
which had been cut from the Morning Advertiser of that day, and
bore upon its face the date, Friday, May 16, 1892. In due time,
as required by the notice, Mrs. Brisay caused to be served upon
some official connected with the Morning Advertiser, at its office,
satisfactory proofs of her claim for the death of her son, and de-
manded the payment of the $500, which was refused, and thereupon
she brings this action. Upon the trial, various objections were
taken to the maintenance of the action by the plaintiff, but there
was no disputed question of fact. A verdict was therefore ordered
for the plaintiff, and, upon the direction of the court, the defend-

ant makes this motion for a new trial upon the minutes, that the questions presented may more conveniently be considered.

The principal objection made by the defendant to the plaintiff's recovery is that the contract is ultra vires. If this objection is well taken, and because of it the plaintiff is not entitled to recover, it disposes of the whole case, and none of the other objections need be considered. As is stated, the defendant is a corporation organized under chapter 40 of the Laws of 1848, providing for the organization of business corporations in general. It was organized in 1888, and the death of Thomas Brisay, by virtue of which the plaintiff's right of action accrued, if she has any, took place on the 16th day of May, 1892. The rights of the parties are to be controlled by the statutes as they existed at that day, and are not governed by the general corporation law or the business corporation law, passed in 1892, but which became laws on the 18th day of May. The statute under which the defendant is organized provides that the objects for which the company is created shall be stated in the certificate which is filed in the office of the secretary of state. That certificate provides that the objects for which the defendant is formed are the printing, publishing, and selling of newspapers. The law of 1848 prescribes, also, that every corporation created under it shall possess the general powers and privileges, and be subject to the liabilities and restrictions, contained in the Revised Statutes with regard to the powers, privileges, and liabilities of corporations. The first section of that statute prescribes that no corporation shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers given to it by its charter. 1 Rev. St. p. 600, § 3. The charter of this corporation is, of course, the certificate filed in the office of the secretary of state; and the powers given to it are such as are necessarily incident to the printing, publishing, and selling of newspapers, and it has no other powers, except such as are incident to that occupation. The notice which was published in the Morning Advertiser, and which is set out in the former part of this opinion, was, as it states, a proposition to give $500 insurance to every person who performed the conditions prescribed in the offer. If this offer was so accepted as to ripen into a contract, as the plaintiff claims that it was, it amounted to a contract on the part of the Morning Advertiser to insure the life of Thomas Brisay for $500, for the benefit of his next of kin. It cannot be said that any such contract as that was a necessary incident to the power of printing or publishing or selling a newspaper, but it was something entirely outside of the business which is usually conducted by such publishers. The right of corporations to make contracts is confined to such contracts as are incident to the objects for which they are organized. This special limitation is not only created by the statute which has been cited above, but it was the rule of the common law, and it was well settled both in this country and in England, that contracts of corporations are ultra vires when they involve adventures or undertakings outside, and not within, the scope or power given by their charters. As artificial creations,

corporations possess only the powers with which they are endowed. Jemison v. Bank, 122 N. Y. 135, 25 N. E. 264. To make the act of a corporation ultra vires, it is not necessary that it should be prohibited by the charter from performing the act. If the act is one which is outside of the objects for which the corporation is created, and cannot be said to be incident in some way to the execution of its powers, the act is nevertheless void, although it may not have been, in terms, forbidden by the statute. 2 Kent, Comm. (13th Ed.) 300, note 1. It is no matter if the act done may be said to be, in some sense, a benefit to the corporation. It is nevertheless void, unless it is within the power of the corporation to perform it. Davis v. Railroad Co., 131 Mass. 258. The making of this contract, being thus outside of the objects for which this defendant corporation was organized, was clearly beyond its power, and is therefore void. As such, it cannot be enforced by the plaintiff, unless some principle of law can be invoked, by means of which the corporation can be charged with the burdens of this contract, although it was beyond its power to make it in the first instance. There are many cases in the books in which a corporation has been charged upon a contract which was held to be ultra vires. But this has been done, usually, upon the principle of estoppel. The leading case upon that subject in this state is Whitney Arms Co. v. Barlow, 63 N. Y. 62. In that case the defendants were sued, as trustees of a corporation, because of a failure to make, publish, and file the annual report. The plaintiff claimed to be creditor of the corporation, under contract, by which it had made and delivered to the defendant 10,000 locks. The defense was, among other things, that the plaintiff was not a creditor, because the making of the locks was not one of those things for which the plaintiff company was incorporated, and therefore was ultra vires. For that reason it was claimed that no contract liability arose between the plaintiff and the company of which the defendants were trustees. The court held that the making of locks was not within the purposes for which the plaintiff was incorporated, nor incidental to those purposes, and therefore was beyond its powers, but that as the locks had been made and delivered to the defendants' corporation, and therefore the contract had been fully performed by the plaintiff, the defendants, who had received from the corporation the full benefit of the performance of the contract, could not avail themselves of the plea that the objects of the contract were beyond the power of the plaintiff. It was said there that the rule was well settled that a corporation could not avail itself of the defense of ultra vires when the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. But that is not this case. There was no allegation, nor was there any proof, that either Thomas Brisay or the plaintiff had parted with anything on the faith of this offer, or that the corporation had received any benefit which would make it inequitable for the corporation to insist that the supposed contract was beyond its powers. But, even if that were not so, it is very doubt-

ful whether there are not some contracts of a corporation which are so far beyond its powers to make that the doctrine of estoppel cannot be invoked to make them good. The term "ultra vires" is used in more than one sense. In the first place, an act of a corporation is said to be ultra vires when it is not within the scope of the powers of the corporation to perform it under any circumstances, or for any purpose. An act is also said to be ultra vires, with reference to the rights of certain parties, when the corporation is not authorized to do the act without their consent. And the third, with reference to some specific purpose, when the corporation is not authorized to perform the act for that particular purpose, although the act itself may be, for some purposes, fully within the scope of the general powers of the corporation. In the last two cases, one who deals in good faith with a corporation having the apparent right to do the act, and who parts with anything of value to the corporation, as a consideration for its promise, is permitted to say that the corporation is estopped from insisting that the act which was done for its benefit was beyond its power, and he will be at liberty to recover the value of the articles furnished or the work done for the corporation. Tracy v. Talmage, 14 N. Y. 162; Whitney Arms Co. v. Barlow, supra; Farmers' Nat. Bank v. Sutton Manuf'g Co., 6 U. S. App. 312, 3 C. C. A. 1, 52 Fed. 191. But every one who deals with a corporation is bound to take notice of its corporate powers, and, if a reference to its charter shows that the act is not within the scope of its corporate authority, he must know that such act is void, and that it cannot be made the basis of any claim against the corporation (Jemison v. Bank, 122 N. Y. 135, 25 N. E. 264; Davis v. Railroad Co., 131 Mass. 258); for, as is said by the court in Peterson v. Mayor, etc., 17 N. Y. 449, 454, no sort of a ratification can make good the act which is without the scope of corporate authority. The authorities on this subject have been so thoroughly examined, and the questions are so fully settled, that it is hardly necessary to pursue the discussion. Davis v. Railroad Co., 131 Mass. 258; Iron Co. v. Riche, L. R. 7 H. L. 653. The two cases just cited have been followed in this state in the case of Jemison v. Bank, supra. Within the cases above cited, and many others which are referred to by them, there can be no doubt that this contract was entirely outside of the corporate powers of this corporation. For that reason, without considering any other of the numerous questions presented, it must be held that the plaintiff cannot recover in this action. A new trial must therefore be granted. Ordered accordingly.