SCANDINAVIAN IMPORT-EXPORT COMPANY, INC., Respondent, *v.* FRANK H. BACHMAN and Others, Copartners Doing Business under the Firm Name and Style of H. F. BACHMAN & Co., Appellants.

First Department, March 4, 1921.

Corporations — when corporation may not repudiate agreement to deal in cotton futures and recover back moneys deposited as margins on ground of ultra vires — when purchases of cotton future contracts not unlawful — application of rule of Cotton Exchange that brokers deal as principals — defense of ultra vires not looked upon with favor with respect to business and trading corporations.

A corporation authorized by its charter to buy and sell any kind of personal property and any interest therein may contract with a firm of brokers for speculation in cotton futures and is not entitled to repudiate said contract and the transactions thereunder and to recover back money deposited as margins solely on the ground that the contract was *ultra vires.*

The complaint does not show that the plaintiff's agreement with the defendants was unlawful or that the transactions had thereunder were unlawful.

Purchases of cotton future contracts do not become unlawful by being closed out by a sale by the broker, by direction of the customer, before the time for the delivery of the cotton under the contracts and by a settlement being then made between them on the basis of the difference between the purchase and selling price.

The rules of the Cotton Exchange under which the brokers deal as principals do not preclude the making of a contract between a customer and a broker by which, as between them, the broker would become the agent of the customer who would be entitled, as between him and the broker, to the benefit of the transactions had by the broker as principal with other brokers, but for the customer.

The defense of *ultra vires* with respect to business and trading corporations is not looked upon with favor, especially concerning contracts which have been fully executed by the other party.

Allegations of the complaint aforesaid that the defendants under the contract executed orders given by the plaintiff from time to time for the purchase and sale of cotton future contracts preclude a recovery by the plaintiff, in disregard of the transactions had by the defendants for its account, of the money it deposited with the defendants.

APPEAL by the defendants, Frank H. Bachman and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of November, 1920, denying their motion for an order sustaining their demurrer to the complaint and for judgment on the pleadings.

The complaint shows that the plaintiff is a domestic corporation, duly organized and existing under the Business Corporations Law; that its certificate of incorporation — designated in the complaint as its charter — was filed in the office of the Secretary of State on the 8th of August, 1919, and a duplicate thereof was filed in the office of the county clerk of New York county three days thereafter; that its principal office and place of business is at No. 52 Broadway, borough of Manhattan, New York city; that the defendants were and are copartners in business in the city, county and State of New York under the firm name of H. F. Bachman & Co.; that on or about the 17th of March, 1920, plaintiff and defendants entered into an agreement wherein and whereby it was agreed that the plaintiff would open an account with the defendants "for the purpose of enabling plaintiff to speculate in cotton futures and that defendants would execute plaintiff's orders to buy and sell cotton futures for the account of plaintiff;" that thereafter, pursuant to said agreement, plaintiff requested defendants from time to time to sell and buy cotton future contracts and the defendants executed the orders; that pursuant to the agreement and upon the request of the defendants,

plaintiff paid to the defendants specified sums of money on different dates commencing with the 5th day of April, 1920, and terminating on the third of August thereafter, aggregating $13,153.03; that the sole powers granted to the plaintiff by the State of New York are set forth in its certificate of incorporation or charter as follows:

" To do a general business as commission merchants, selling agent and factor under *del credere* commission or otherwise in the manner and to the same extent as natural persons could do.

" To carry on any or all business as manufacturers, producers, merchants, wholesale and retail, importers and exporters, generally without limitation as to class of products and merchandise, and to manufacture, produce, adapt, prepare, buy, sell and otherwise deal in any materials, articles or things required in connection with or incidental to the manufacture, production and dealing in such products.

" To make and enter into all manner and kinds of contracts, agreements and obligations by or with any person or persons, corporation or corporations for the purchasing, acquiring, holding, manufacturing and selling or otherwise dealing in, either as principal or agent, upon commission or otherwise, any and all kinds of goods, articles or personal property, whatsoever, and generally with full power to perform any and all acts connected therewith or arising therefrom, or incidental thereto, and any and all acts proper or necessary for the purpose of the business.

" To carry on and undertake any business, undertaking, transaction or operation commonly carried on or undertaken by merchants, commission men, factors, brokers, importers and exporters and manufacturers' agents.

" SUBJECT TO THE LIMITATIONS AND RESTRICTIONS IMPOSED BY LAW:

" To purchase, lease or otherwise acquire and to hold, own, sell or dispose of real and personal property of all kinds, and in particular lands, buildings, business concerns and undertakings, shares of stock, mortgages, bonds, debentures and other securities, merchandise, book debts and claims, trademarks, trade names, patents and patent rights, copyrights and any interest in real or personal property;

First Department, March, 1921. [Vol. 195.

" To borrow money for its corporate purposes and to make, accept, endorse, execute and issue promissory notes, bills of exchange, bonds, debentures or other obligations from time to time, for the purchase of property or for any purpose in or about the business of the company, and, if deemed proper, to secure the payment of any such obligations by mortgage, pledge, deed of trust or otherwise;

" To acquire, and take over as a going concern, and thereafter to carry on the business of any person, firm or corporation engaged in any business which this corporation is authorized to carry on, and in connection therewith, to acquire the good will and all or any of the assets and to assume or otherwise provide for all or any of the liabilities of any such business;

" To sell, improve, manage, develop, lease, mortgage, dispose of or otherwise turn to account or deal with all or any part of the property of the company;

" To carry on business at any place or places within the jurisdiction of the United States, and in any and all foreign countries, and to purchase, hold, mortgage, convey, lease or otherwise dispose of and deal with real and personal property, at any such place or places;

" To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects or the furtherance of any of the powers hereinbefore set forth, either alone or in connection with other corporations, firms or individuals and either as principals or agents, and to do every other act or acts, thing or things, incidental or appurtenant to or growing out of or connected with the aforesaid objects, purposes or powers, or any of them."

It is further alleged that the agreement and the transactions had thereunder were *ultra vires* and were not authorized by, were contrary to, in direct violation of, and extraneous to the charter of the plaintiff and that this was well known to the defendants and that the plaintiff never received anything of value from the defendants under said agreement and did not derive any benefit or advantage " from the aforesaid transactions with defendants." Judgment is demanded for the sum of $13,153.06, together with interest and costs. The sole ground of the demurrer is that it appears upon the face of the

complaint that it does not state facts sufficient to constitute a cause of action and defendants demand judgment dismissing the complaint, with costs.

*Edward A. Alexander* of counsel [*Frank Weinstein* with him on the brief], for the appellants.

*Ten Eyck R. Beardsley,* for the respondent.

Laughlin, J.:

The complaint was framed and the appeal has been argued on the theory that the certificate of incorporation is no broader than authorized and, therefore, since those powers apparently authorize any lawful business, with certain exceptions not applicable here (Business Corp. Law, § 2; * *Jacobs* v. *Monaton R. I. Corp.,* 212 N. Y. 48), we shall so assume.

It will be observed from the statement of facts that the certificate of incorporation of the plaintiff does not indicate a primary purpose or purposes of its organization and specifies many powers and also confers upon it very general and comprehensive powers under which it may embark in a variety of enterprises without even limitation as to territory. It was authorized, among other things, to do a general business as a commission merchant, selling agent, and factor, under *del credere* commissions or otherwise in the manner and to the same extent as a natural person; to carry on business as a manufacturer, producer, merchant, and wholesale and retail importer and exporter of any products and merchandise; to make and enter into "all manner and kinds of contracts, agreements and obligations" for purchasing, acquiring, holding, manufacturing, selling or otherwise dealing in all kinds of goods, articles, or personal property, either as principal or as agent, and subject to the limitations and restrictions imposed by law to purchase, lease or otherwise acquire, hold, sell, convey, and dispose of real and personal property, including shares of stock and other securities and any interest in real or personal property, and to borrow money for its corporate purposes and to accept, indorse, execute and issue promissory notes and other obligations for the purchase of property or for any other purpose in or about the business of the company,

---

* Amd. by Laws of 1909, chap. 484.— [Rep.

First Department, March, 1921. [Vol. 195.

and to secure payment of such obligations by mortgage, pledge, deed of trust, or otherwise, and to carry on business at any place or places within the jurisdiction of the United States and in foreign countries, and to purchase, hold, mortgage, lease or otherwise dispose of and deal in real estate and personal property at any such place or places; to do all things necessary, suitable or proper for the accomplishment of any of the purposes, the attainment of any of the objects, or the furtherance of any of the powers set forth in the certificate of incorporation, either alone or in connection with others and either as principal or agent, and to do every other act or thing incidental or appertaining to and growing out of or connected with "the aforesaid objects, purposes or powers, or any of them."

So far as appears, this was the only business in which the plaintiff engaged and after inducing the brokers to loan and advance the funds required over and above the margins deposited, it has repudiated all the transactions and claims the right to recover back the money deposited as margins.

It is to be borne in mind that it is the corporation itself which is attempting to repudiate its own contract duly authorized if the board of directors and stockholders could authorize it, and the purchases and sales of cotton future contracts which the defendants made for its account. The stockholders of the plaintiff are not directly before the court and it is unnecessary to express any opinion with respect to whether, after becoming stockholders of a corporation with such general powers, they might in any circumstances be entitled to enjoin the corporation from investing its funds in speculative prices. The points presented for decision relate only to the power of the corporation and its right to repudiate its own contract and transactions had under it and to recover back the moneys it deposited with the defendants solely on the ground that the contract and transactions which it assumed to authorize were *ultra vires*. I am of opinion that the authority conferred to buy and sell any kind of personal property and any interest therein authorized the corporation to deal in cotton and to buy and to sell it and to buy contracts for the future delivery of the cotton and to sell the same, which is the business it contracted to do and transacted with the defendants under the contract. The company was not authorized to make *unlawful*

contracts (*Medlin Milling Co.* v. *Moffatt Commission Co.,* 218 Fed. Rep. 686); but the facts alleged do not show that its agreement with the defendants was unlawful or that the transactions had thereunder were unlawful. If it had been alleged that the plaintiff did not intend to take the cotton under the contracts and that it was so understood between the plaintiff and the defendants and that it was not to accept delivery of any of the cotton and that there were to be no actual purchases or sales but that settlements were to be made between the plaintiff and the defendants solely on differences by which is meant that if the difference between the market price of a contract purchased for the plaintiff and the price at which it was sold was in favor of the customer such difference was to be paid to the customer by the brokers, and if against the customer it was to be paid by it to the brokers, the agreement would constitute a gambling contract and be unlawful; but where that is not the intention of the customer and the understanding between him and the broker, purchases of cotton future contracts do not become unlawful by being closed out by a sale by the broker by direction of the customer before the time for the delivery of the cotton under the contracts and by a settlement being then made between them on the basis of the differences between the purchase and selling prices. (*Hurd* v. *Taylor,* 181 N. Y. 231; *Springs* v. *James,* 137 App. Div. 110; affd., 202 N. Y. 603; *Smith* v. *Craig,* 211 id. 456; *Medlin Milling Co.* v. *Moffatt Commission Co.,* 218 Fed. Rep. 686; 14 Am. & Eng. Ency. of Law [2d ed.], 605–607; 26 id. 1060; 20 Cyc. 926–931; Dos Passos Stock & Stock B. 405, 505, 506, 568, 572, 575–577, 582.) The allegations of the complaint fall far short of showing that the agreement was illegal within the rule stated.

Counsel for the respondent claims that under the rules of the Cotton Exchange, the brokers deal as principals; and that, therefore, defendants were not the agents of the plaintiff and that it must be deemed to have dealt with them as principals, and that since it is alleged that the plaintiff never received anything from the defendants, it is entitled to recover the money deposited with them. The rules of the Cotton Exchange are not pleaded, but very likely they so provide, for it appears from reported decisions that thereunder the brokers as between

themselves become principals (*Jemison* v. *C. S. Bank*, 122 N. Y. 135); but such a rule would not preclude the making of a contract between a customer and a broker by which as between them the broker would become the agent of the customer who would be entitled as between him and the broker to the benefit of the transactions had by the broker as principal with other brokers but for the customer.

It is, of course, well settled that a trustee may not speculate with trust funds (*Jemison* v. *C. S. Bank, supra; Hart* v. *Goadby*, 138 App. Div. 160), and that principle of law was applied in *Jemison* v. *C. S. Bank* (*supra*), wherein it was held that a savings bank, which was authorized to buy and sell government stocks and other securities, was not authorized to speculate in cotton futures; but the decision was predicated on the law regulating the securities in which such banks may invest the funds deposited with them and on the insecurity to the depositors that would result if such banks were allowed to speculate with the funds deposited with them. The courts in deciding whether acts are *ultra vires* and the effect thereof, recognize and apply a distinction between corporations, the purposes of which are, or largely are, of a fiduciary nature and business and trading corporations; and with respect to business and trading corporations the defense of *ultra vires* is not looked upon with favor, and especially, as here, concerning contracts which have been fully executed by the other party. (*Gause* v. *Commonwealth Trust Co.*, 196 N. Y. 134, 153–155; *Whitney Arms Co.* v. *Barlow*, 63 id. 62; *Woodruff* v. *Erie R. Co.*, 93 id. 609; *Keating* v. *American Brewing Co.*, 62 App. Div. 501; *Vought* v. *Eastern Building & Loan Assn.*, 172 N. Y. 508; *Wormser* v. *Metropolitan Street R. Co.*, 184 id. 83–90; *Bath Gas Light Co.* v. *Claffy*, 151 id. 24; White Corp. [8th ed.] 35.)

The complaint does not show the state of the account between the plaintiff and the defendants, but it alleges that the defendants under the contract executed orders given by the plaintiff from time to time for the purchase and sale of cotton future contracts. These allegations preclude a recovery by the plaintiff, in disregard of the transactions had by the defendants for its account, of the money it deposited with the defendants.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the demurrer sustained and the complaint dismissed, with ten dollars costs.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, motion granted, demurrer sustained and complaint dismissed, with ten dollars costs.