BROOKLYN NATIONAL BANK OF NEW YORK, Plaintiff, *v.* KEYSTONE BOND & MORTGAGE COMPANY, INC., and Another, Defendants.

Supreme Court, Kings County, May 16, 1933.

*Kerfoot & MacArthur*, for the plaintiff.

*William Godnick*, for the defendant.

JOHNSTON, J. Plaintiff, a national bank, sues upon a promissory note in the sum of $43,000 made by defendant Keystone Bond & Mortgage Company, Inc., and an instrument guaranteeing payment thereof made by defendant Keystone Investing Corporation. Defendants admit the allegations of the complaint, but interpose a counterclaim for $11,982.50, alleged to be due under a certain agreement made by plaintiff and the Keystone Financial and Industrial Corporation. The latter, prior to the making of the note in suit, assigned its claim to defendant Keystone Bond & Mortgage Company, Inc. It is alleged that under the terms of the agreement the financial corporation undertook to act as the agent

of plaintiff in the purchase of corporate stocks which plaintiff might desire to obtain for its customers or depositors or others.

It is further alleged that pursuant to such agreement, and at plaintiff's request, the financial corporation purchased certain shares of the corporate stock of plaintiff and paid therefor the sum of $11,945, and thereafter tendered the stock to and demanded payment from plaintiff of the sum thus expended, plus $37.50 as compensation; that plaintiff failed to accept the stock or to pay for same, but requested the financial corporation to hold the stock for it; that, since the assignment, the defendant Keystone Bond & Mortgage Company, Inc., has held the stock, subject to plaintiff's order and the payment of the amount due. Plaintiff moves to strike out the counterclaim upon the ground that the transaction is *ultra vires* and void. Plaintiff relies in part on Paton's Digest (Vol. 2, p. 1173), wherein it is stated " that the power to act as purchasing, selling or investing agent has not been expressly conferred by the National Bank Act and is not to be implied as an incident to the banking business; that it is therefore *ultra vires*." The author predicates the statement above quoted upon certain cases arising in other jurisdictions, only one of which was decided as late as 1916, the others having been determined between the period of 1875 and 1898. In the light of recent decisions it is doubtful if the cases cited in support of the proposition urged are now controlling.

In *Dyer* v. *Broadway Central Bank* (252 N. Y. 430), the court held that it could not be said as a matter of law that a contract by a bank for the purchase of stocks for the account of customers was not included within the incidental powers of a bank. The court said: " It is well known that many depositors in banks deal directly with their banks in making purchases of stocks on the stock exchange. In fact, it is a matter of common knowledge and has been so recognized by this court. * * * In determining this case, we should not close our minds to the well-known fact that the banking business in this country has developed rapidly during the last few years to meet the ever-growing demands of business. Banks *ex necessitate* have been required to extend their functions and perform services formerly foreign to the banking business. Courts have taken cognizance of that fact in passing upon cases involving questions of banking law." Upon the foregoing reasoning the Court of Appeals rejected a contrary conclusion of the Appellate Division in the First Department. It will be noted that the latter court, in holding that a bank had no incidental power to purchase stock for customers, relied particularly upon the author's statement in Paton's Digest. (See *Dyer* v. *Broadway Central Bank*, 225

App. Div. 366.) In *Block* v. *Pennsylvania Exchange Bank* (253 N. Y. 227, 232) the court said: " There is no question that the practice of banking as it has developed in our day upholds the purchase of securities for the benefit of customers whose deposit accounts are sufficient, as the result of loans or otherwise, to justify the credit. The practice is so general that it may be the subject of judicial notice." It is true that in both the *Dyer* and *Block Cases* (*supra*) the court was dealing with the power of a State bank under the State law to act as agent in the purchase of stocks, whereas in the instant case the court is required to pass upon the question whether there resides a like power in a national bank under the Federal statute.

The State statute (Banking Law, § 106) and the Federal statute (U. S. Code, tit. 12, § 24) define the general powers of State and national banks, respectively, and confer in identical language " all such incidental powers as shall be necessary to carry on the business of banking." I know of no reason for condemning an act under the Federal banking statute which has recently received the sanction of the highest State court in its interpretation of a similar State statute. Plaintiff urges that the transaction alleged in the counterclaim is proscribed by the provisions of section 83 of title 12 of the United States Code (Banks and Banking). The latter statute prohibits the purchase by a bank of its own stock except for purposes not here involved. The basic purpose of the statute cited is to prevent a national bank from impairing its credit by becoming the beneficial owner by purchase of its own stock. Assuming that a bank has incidental power to act as agent for customers, depositors or strangers in the purchase of stock other than its own, the statute does not either expressly or by fair implication in a proper case prevent a bank from acting as agent for another in the purchase of its own stock. If the agreement was that the plaintiff was to purchase its own stock for itself, it may be unenforcible, but the agreement alleged is that the financial corporation was to act as agent in the purchase of stocks for plaintiff's customers or depositors or others. Whether such a transaction is within or without the incidental powers of plaintiff depends upon the facts and circumstances and cannot be determined upon the pleadings. If plaintiff merely made a loan to a customer or depositor or stranger to enable him to purchase the stock for himself, it would not have violated the statute. As was said by the former chief judge in the *Block Case* (*supra*): " It could not have done an act more characteristic of the banking business. * * * The test is the relation of the act to that substitution of credits which is of the essence of the banking function." *Jemison* v. *Citizens' Sav. Bank of Jefferson*

(122 N. Y. 135), relied upon by plaintiff, has been sufficiently distinguished in the *Block* case, in that the transaction was void because it was of a purely speculative character. Here, however, there is nothing on the face of the pleadings to show that the present case comes within that category.

The motion is denied.