(66 App. Div. 522.)

## HESS v. W. & J. SLOANE.

(Supreme Court, Appellate Division, First Department.  December 6, 1901.)

1. CORPORATIONS—ULTRA VIRES—PLEADING.

   The defense that a contract of suretyship entered into by a corporation is ultra vires, to be available, must be pleaded.

2. SAME—PLEDGE OF CREDIT—OBJECT.

   Where a manufacturing and mercantile corporation has sold a large quantity of goods on credit to a hotel keeper, whose only means of payment is derived from the profits on such business, it has implied power to pledge its credit to assist such debtor to borrow money to enable him to continue his business, and thereby pay for such goods.

3. SAME—AGENT—AUTHORITY.

   Where the secretary and director of a corporation, who had authority to represent it in selling a large quantity of goods to a customer on credit, and to make the terms, and had charge of the account, pledged the credit of the corporation to assist such customer in borrowing money to continue the business, which furnished his only means of paying for the goods, such pledge of credit is within the authority conferred on such officer by the corporation.

   Patterson, J., dissenting.

Appeal from trial term.

Action by Charles A. Hess, as assignee for the benefit of the creditors of Sol S. Sayles, against W. & J. Sloane. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and HATCH, INGRAHAM, and LAUGHLIN, JJ.

Selden Bacon, for appellant.

Louis Marshall, for respondent.

INGRAHAM, J.  This action is brought to recover $3,500, the amount of a promissory note made by a copartnership doing business in the city of New York under the name of Foster Bros., indorsed and paid by the plaintiff's assignor.  The complaint alleges that the firm of Foster Bros., at the date of the making of the note, "were agents for the above-named defendant, and as such agents were engaged in the management of the hotel known as the 'New Amsterdam Hotel' in the city of New York, and in conducting the business of operating said hotel for the benefit of the said defendant"; that "on or about the above-named date said Foster Bros., as such agents as aforesaid, and at the special instance and request of the said defendant, requested the plaintiff to indorse a certain promissory note made by the said Foster Bros. to the order of the plaintiff in the sum of $3,500"; that at the time of such request said defendant promised and agreed to and with the plaintiff that when the said note became due the same would be paid by the said defendant, and that the plaintiff would not be called upon to pay the same or any part thereof; that, "relying upon said promise and agreement, this plaintiff indorsed said note"; that thereupon the said Foster Bros., as agents as aforesaid, "procured the said note to be discounted, and paid the proceeds of the discount thereof to the said defendant, who thereupon received

the benefit of said indorsement and of said discount"; that subse-
quently, when the said note became due and payable, said Foster
Bros., as agents as aforesaid, at the special instance and request of
the defendant, requested plaintiff to indorse a new note in renewal
of said above-mentioned note, then due and payable, and at the time
of such request the defendant promised and agreed to and with this
plaintiff that upon the maturity of the renewal note the same would
be paid by the said defendant, and that the plaintiff would not be
called upon to pay the said note, or any part thereof; that, relying
upon such promise, the plaintiff indorsed the said note, which, when
it became due, was protested for nonpayment, whereupon the plain-
tiff paid the said note; and that the defendant has wholly failed and
neglected to pay said notes, or either of them, and the said note is
still unpaid.   The answer of the defendant is, in substance, a general
denial of all the allegations of the complaint, except the incorporation
of the defendant and the fact that Foster Bros. were copartners.
Upon this trial the court held that the evidence was not sufficient
to sustain a finding that W. & J. Sloane were the principals and
Foster Bros. their agents; that "the overwhelming preponderance
of evidence is that the true relation between them was that of sell-
ers and buyers"; and that question was withdrawn from the con-
sideration of the jury.   The court, however, held that there was the
further question that, if the defendant induced the plaintiff's assignor
to indorse the note in question by requesting him to do so, and at the
same time assuring him that it would pay it, or see it paid, or take
care of it at maturity, and that the plaintiff's assignor would not be
called upon to pay it, it would be liable, because it had some interest,
though indirect, in helping the Foster Bros. to make a success, and
their promise amounted to an original promise pursuant to which
the plaintiff's assignor made the indorsement; and that that was
the only question that would be submitted to the jury.   The court
then submitted that question to the jury.   The defendant requested
the court to charge that there was no evidence that Mr. Allen had
authority to pledge the credit of W. & J. Sloane to protect the plain-
tiff's assignor on the indorsement of either one of the notes.   This
was declined, and defendant excepted.   The court was also asked
to charge that, if the promise was made "we will see it paid," and
"we will take care of it," it was ultra vires, which was also denied, and
the defendant excepted.   The jury found a verdict for the plaintiff,
and from the judgment entered thereon, and from an order denying
a motion for a new trial, the defendant appeals.

Upon the trial, therefore, the right of the plaintiff to recover de-
pended upon the existence of an agreement by which the defendant
agreed to pay this note of Foster Bros. when due, and upon the
faith of which agreement the plaintiff's assignor indorsed the note.
The defendant insists that the agreement was ultra vires.   This
defense is not pleaded, and it would seem that, to be available, a
defense of ultra vires must be pleaded.   If, however, it is available,
I do not think that such an obligation, under the circumstances
here shown, can be said to be beyond the power of such a corpora-
tion as this defendant.   The certificate of incorporation of the de-

fendant is in evidence, and from it it appears that "the objects for which said company is formed are the manufacture and sale of carpets and other floor coverings, upholstery goods, and articles of furniture." In carrying out its business in the manufacture and sale of these articles the corporation certainly had the incidental powers necessary and convenient for the conduct of its business. It had sold to this firm of Foster Bros. a large amount of carpets and furniture upon credit, with the understanding that the property thus sold should remain the property of the defendant until paid for by the purchasers. The purchasers were in possession of the property, and had obligated themselves to pay $3,000 per month on account of their indebtedness to the defendant. It is quite apparent that Foster Bros. had no resources with which to make these payments, except the profits of the hotel, and their ability to pay depended upon their being able to carry on the hotel business. To prevent them from failing in their business, or to enable them to carry on such business, it would be quite clear that the corporation would have authority to advance them money for that purpose, or to secure the payment of any advances made to enable them to carry on such business; and that is, in effect, what the defendant did by the contract in question. Making such advances, or becoming security for a person who did make them, is not prohibited by the defendant's charter, or the statute under which it is incorporated; and a manufacturing corporation, engaged in the manufacture of goods on credit, has, as an incident to that business, a power to take such measures as are reasonably proper to protect its debtors so as to enable it to realize the amount of their indebtedness. Whether such a corporation would have power to indorse a note or loan its credit for the accommodation of another with whom it has no business transactions, or where such an accommodation has no relation to the business that it was organized to transact, is not presented. That was the question in the case of National Park Bank v. German-American Mut. Warehouse & Security Co., 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673. The question here presented is discussed at length by Mr. Justice Rumsey in the case of H. Koehler & Co. v. Reinheimer, 26 App. Div. 1, 49 N. Y. Supp. 755, and he states the rule that, "except as restrained by law, trading corporations have the implied power to make all such contracts as will further the objects of their creation, and their dealings in this regard may be likened to those of an individual seeking to accomplish the same ends." Within this rule we think that making an advance, either of money or of credit, to Foster Bros., from whom this defendant was to receive large payments for goods sold to them, was within the implied power of the corporation, and not ultra vires.

The defendant also insists that Allen, the person who made this agreement with the plaintiff's assignor, was not authorized to make such an agreement; but I think the evidence is sufficient to show such authority. Allen was the secretary and a director of the company. It would seem that he had made the sale of these goods to Foster Bros., and had executed on behalf of the company the contracts relating thereto; and the evidence is that he was the one

who had charge of the account with Foster Bros., and advised, if not dictated, the manner in which they would dispose of the moneys received in their business, and generally exercised a supervision over the account between them and the defendant. Allen testified that there was no resolution of the board of directors of the defendant authorizing him to indorse for accommodation or to guaranty the negotiable paper of other persons for accommodation, and that he never received any authority from the board of directors, or any other authority from the corporation, to so indorse or guaranty; but that he had authority to make terms and conditions upon which the goods were sold, and that the making of terms and disposal of credits was under his supervision. Having this general power to act for the corporation, an agreement for the protection of such an account would seem to have been within the authority conferred upon him by the corporation. My conclusion, therefore, is that the agreement with the plaintiff's assignor was not ultra vires, and from the facts as disclosed Allen had power to make such a contract as was here made which would be binding upon the defendant.

There are several exceptions to rulings upon questions of evidence, which are relied upon by the defendant, but they do not seem to be material. When the extract from the signature book of the Bank of the Metropolis was admitted in evidence, there was testimony that the defendant had introduced Foster Bros. to the Bank of the Metropolis as customers, and, although there was testimony contradicting this fact, the admission of this signature book in evidence could not prejudice the defendant. The admission of the testimony of the conversation between Foster and the plaintiff's assignor when Foster told the plaintiff's assignor to go and see the defendant about the indorsement was not error, as it was evidence to show that Sayles relied upon the agreement with Allen in making this indorsement, and Sayles afterwards testified that he told Allen of his conversation with Foster at the time the agreement was made. I have arrived at the conclusion that no error was committed on the trial which would justify a reversal of the judgment, and it should be affirmed.

The judgment and order appealed from should be affirmed, with costs.

HATCH and LAUGHLIN, JJ., concur. PATTERSON, J., dissents.