Thomas Gordon Malting Company, Appellant, *v.* Bartels Brewing Company, Respondent. (Actions Nos. 1 & 2.)

Contract — action to charge principal where contract is made by another — liability of person signing contract in his own name although acting for another — evidence — defense of ultra vires — when physical tender of property sold is not necessary — breach of contract to purchase goods to be thereafter manufactured — measure of damages for aggrieved party.

1. In an action to charge the real principal where a contract apparently made by one party was in fact made by another, parol evidence is competent to show who were the parties to the transaction, and it is equally open to a party not named to show that he was not the real principal.

2. Where a party signs a contract in his own name, even though he is acting for another, he is personally bound thereby. If the other party to the contract elects to hold the signer thereof, parol evidence is not admissible to release him from the obligation which he has voluntarily assumed.

3. The defense of *ultra vires* is always an affirmative defense, and must be pleaded. (*Hess* v. *Sloane*, 66 App. Div. 522; affd. on opinion below, 173 N. Y. 616, followed.)

4. A party liable upon a contract of sale is not relieved from liability thereunder by the vendor's accepting notes from a volunteer having no privity with the purchaser and bringing suit for moneys due thereon. Such attempted payment and satisfaction cannot inure to the purchaser's benefit.

5. Where the subject-matter of a contract is such that it is not · necessary to make a physical tender of the goods, and shipments are to be made according to directions from the other party, the refusal to give such directions after request makes the breach complete.

6. Where the contract is for the manufacture and sale of an article, not *in esse*, sold only upon order at specified seasons of the year, and for which there is no general and certain market, the aggrieved party is entitled to such substantial damages as he can prove. The usual measure of damages in such a case is the contract price, less the cost of production.

*Gordon Malting Co.* v. *Bartels Brewing Co.*, 142 App. Div. 925, affirmed as to first cause of action; reversed as to second cause of action.

*Gordon Malting Co.* v. *Bartels Brewing Co.*, 142 App. Div. 925, reversed.

(Argued October 23, 1912; decided November 26, 1912.)

### Action No. 1.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 10, 1911, affirming, by a divided court, a judgment in favor of defendant entered upon the report of a referee.

This is one of two actions brought by the plaintiff against the defendant, and both were tried before the same referee. This action, called action No. 1, is to recover the purchase price of malt alleged to have been sold and delivered by the plaintiff to the defendant under two written contracts; and action No. 2 is to recover damages for a breach of the second contract. Each of these two contracts consists of an order on the one hand and an acceptance on the other. The first, referred to as contract one, was initiated by the following order:

"Capacity 1,000,000 bushels.

"THE LAKE SHORE MALTING COMPANY.

"SYRACUSE, N. Y., *Dec.* 2, 1903.

"THOMAS GORDON MALTING COMPANY,

"Oswego, N. Y.:

"GENTLEMEN.—You can book our order for 15000 bus. your ⚹ 1 Malt, price 72¢ per bus. F. O. B. Syracuse, and also 15000 bus. of your ⚹ 2 Malt same as samples submitted by Mr. L. A. Eddy, price 64¢ delivered Syracuse,

34

terms 90 days — This malt to be delivered during the season of 1904.

"Yours very truly,
"HERMAN BARTELS."

and the acceptance thereof was as follows:

"Herman Bartels, Esq.,                *Dec.* 8, 1902.
          Syracuse:
"Dear Sir. — Your letter of 2 December containing your order for 30000 bushels malt received with thanks. We have entered the order in our books, and will do our best to please you.

"Yours very truly,
"THE THOMAS GORDON MALTING COMPANY,
"Thomas Gordon, *Treasurer.*"

The other contract, referred to as contract two, is made up of the following order and acceptance:

"Bartels Brewing Company,
          "Syracuse, N. Y., *Sept.* 28*th*, 1904.
" Annual Capacity 300,000 bbls.
"Thos. Gordon Malting Company,
          "Oswego, N. Y.:

"Gentlemen. — You can book our order for 25000 bushels of ✕ 1 malt same as sample submitted through Mr. Eddy, price 64¢ delivered Syracuse, N. Y., terms 90 days.

"Also for 50,000 bushels of ✕ 2 malt, price 61¢ delivered Syracuse terms same as above. Malt to be shipped between November 1st, 1904, and November 1st, 1905. Shipping directions will be given monthly.

"Yours very truly,
"BARTELS BREWING CO.,
"Herman Bartels, *Pres.*"

"Bartels Brewing Co.,                3 *Oct.*, '04.
          "Syracuse, N. Y.:
"Dear Sirs. — Your letter of 28 Sept. with your order for 75,000 bus. Malt received and we hereby confirm it

and have entered it on our books in conformity with your said letter.

"It is understood you will take delivery of a proportionate quantity each month or about that. Thanking you for the order, we are,

"Yours truly,

"THE THOS. GORDON MALTING CO.

"per THOS. GORDON,

"*Treasr.*"

The complaint in this action (No. 1) contains two counts. The first is for the balance which the plaintiff claims is due under contract one; and the second is for the purchase price of the malt which was delivered under contract two. The answer of the defendant consists of a general denial and the defense of payment.

The distinctive features of the pleadings in action No. 2, and the issues peculiar to that case will be referred to in a separate memorandum, and the questions which are common to both actions will be discussed in this opinion.

In this action the plaintiff contends that both contracts (one and two) were made with the defendant through Herman Bartels, its president; and the defendant takes the position that contract one, although in form a contract between the plaintiff and Herman Bartels as an individual, was in fact a contract between the plaintiff and the Lake Shore Malting Company through its president, the same Herman Bartels. The defendant further claims that contract two, although in form a contract between it and the plaintiff, was in fact a contract between the plaintiff and the Lake Shore Malting Company, and was simply a continuation of the course of dealing which characterized contract one. The plaintiff in this action claims that it is entitled to recover of the defendant a balance of $5,001.01 and interest for malt delivered but not paid for, under contract one; and the sum of

$7,199.16 and interest for malt delivered but not paid for, under contract two. The defendant in this action contends that the malt sold and delivered under contract one was all paid for by the Lake Shore Malting Company, the actual purchaser; and that the malt delivered under contract two was also paid for by the Lake Shore Malting Company. The referee decided for the defendant and dismissed the complaint in each of the actions, upon findings to which reference will be made. The court at Special Term confirmed the report of the referee, and the Appellate Division, by a divided vote, affirmed the judgment entered upon the referee's report.

*Clarence De Witt Rogers, William Seton Gordon* and *Elisha B. Powell* for appellant. (Action No. 1.) Payment by a stranger does not cancel the debt, nor inure to the benefit of the defendant, and affords no defense to an action upon the debt, unless the payment is made in behalf of the defendant at the defendant's request. (*King* v. *Barnes,* 109 N. Y. 289; *Muller* v. *Eno,* 14 N. Y. 597; *Dougherty* v. *Lion F. Ins. Co.,* 183 N. Y. 302.) The exception to the third so-called conclusion of law, "That there is not sufficient evidence in this case that plaintiff sold * * * to the defendant the malt mentioned in the first count of the complaint in this action," is well taken. (*Ryan* v. *Franklin,* 199 N. Y. 347; *Whalen* v. *Stuart,* 194 N. Y. 495; *Beck* v. *Catholic University,* 172 N. Y. 393.) Being ambiguous on its face this contract was open to parol explanation as to the parties with whom the contract was made. (*Emmet* v. *Penoyer,* 151 N. Y. 564; *Underwood* v. *Greenwich Ins. Co.,* 161 N. Y. 413; *Briggs* v. *Partridge,* 64 N. Y. 357; *Nicoll* v. *Burke,* 78 N. Y. 580; *Coleman* v. *First Nat. Bank,* 53 N. Y. 388; *Milliken* v. *W. U. Tel. Co.,* 110 N. Y. 403; *Ludwig* v. *Gillespie,* 105 N. Y. 653.) The second contract was with the defendant and it was error for the referee to find otherwise. (*Dougherty* v. *Lion Fire Ins. Co.,* 183 N. Y. 302.) The

referee erred in finding that there was no sufficient evidence that plaintiff delivered to the defendant the malt mentioned in the first and second counts of the complaint. (*Fisher* v. *Minot,* 10 Gray, 260; *Ledon* v. *Havemeyer,* 121 N. Y. 179; *Krulder* v. *Ellison,* 47 N. Y. 36; *Sweet* v. *Barney,* 23 N. Y. 335; *Smith* v. *Lynes,* 5 N. Y. 41.) The plea of *ultra vires* is an affirmative defense and must be pleaded. (*Hess* v. *Sloane,* 66 App. Div. 522; 173 N. Y. 616; *Bacon* v. *Montauk Brewing Co.,* 130 App. Div. 737; *Keating* v. *American Brewing Co.,* 62 App. Div. 501; *Karsch* v. *Pottier & Stymus Mfg. Co.,* 82 App. Div. 230; *Stanton* v. *Erie R. R. Co.,* 131 App. Div. 879; 199 N. Y. 529; *Richmond Co. S. P. C. C.* v. *City,* 73 App. Div. 607; *Leslie* v. *Lorillard,* 110 N. Y. 519.) The contracts in question were strictly within the powers of the corporation, and plaintiff was not required to inquire as to the ultimate destination of the malt in selling the same to the defendant. (*City Trust Co.* v. *Wilson Mfg. Co.,* 58 App. Div. 271; *Koehler & Co.* v. *Reinheimer,* 26 App. Div. 1; *Holm* v. *Clause Lipsius Brew. Co.,* 21 App. Div. 204; *Keating* v. *American Brewing Co.,* 62 App. Div. 501; *Morse* v. *Averell,* 10 N. Y. 449; *Hennessy* v. *Muhleman,* 40 App. Div. 175; *Legrand* v. *M. M. Assn.,* 80 N. Y. 638; *Gause* v. *Comm. Trust Co.,* 196 N. Y. 134; *Hess* v. *Sloane,* 66 App. Div. 522; 173 N. Y. 616.)

*J. L. Cheney* for respondent. (Action No. 1.) This is not a case for the application of the rule that where there is any ambiguity in the language used in a contract parol evidence may be given to explain that ambiguity and to show what the language used was intended by the parties to mean. (*Underwood* v. *Greenwich Ins. Co.,* 161 N. Y. 413.) As to the malt sued for in the second count, there was not sufficient evidence to warrant a finding that the plaintiff sold and delivered to defendant the malt therein specified, and the referee's finding that it was not was

amply justified by the evidence. (*Horton, etc., Co.* v. *Merritt,* 93 N. Y. S. R. 416; *Leslie* v. *Lorillard,* 110 N. Y. 519, 531; *Powell* v. *Murray,* 3 App. Div. 273; 157 N. Y. 717; *People ex rel. Tiffany* v. *Campbell,* 144 N. Y. 166; *Jemison* v. *Citizens' Sav. Bank,* 122 N. Y. 135; *Davis* v. *Old Colony R. Co.,* 131 Mass. 252; *Railway Co.* v. *Keokuk B. Co.,* 131 U. S. 371; *Cent. T. Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24; *Keating* v. *American Bridge Co.,* 62 App. Div. 501; *Moss* v. *Averill,* 10 N. Y. 449.) The defense of payment which is set up in the defendant's answer is fully made out by the evidence and is sufficient to bar a recovery here. (*Beals* v. *Home Ins. Co.,* 36 N. Y. 527; *Noel* v. *Murray,* 13 N. Y. 167; *Gibson* v. *Tobey,* 46 N. Y. 637; *Dibble* v. *Richardson,* 171 N. Y. 131; *Hall* v. *Stevens,* 116 N. Y. 201; *Young* v. *Stahelin,* 34 N. Y. 258; *Guest* v. *B. O. H. Co.,* 74 Iowa, 457; *Hall* v. *Herter,* 90 Hun, 280; *Stewart* v. *Union Ins. Co.,* 155 N. Y. 257; *Breed* v. *Cook,* 15 Johns. 241.)

WERNER, J. We have reached the conclusion that the judgment, which dismissed the complaint as to both causes of action, must be affirmed as to the first and reversed as to the second. In order to understand the facts which differentiate the two transactions upon which these two causes of action are founded, we must know something of the facts which are common to both.

The plaintiff was a corporation engaged in the business of manufacturing malt at Oswego, N. Y., and the defendant was a corporation which owned and operated a brewery at Syracuse. When these contracts were entered into Herman Bartels was the president of the defendant, and had his office at its brewery. At the same time he was also the president of the Lake Shore Malting Company, which had its office in the same rooms. Bartels was also interested in other breweries, among which were the Monroe Brewing Company of Rochester and the Chemung Consumers' Brewing Company of Elmira. He

was evidently the controlling spirit, if not the largest stockholder, in the Bartels Brewing Company and the Lake Shore Malting Company, and he seems to have been the practical manager of both.   The business of the brewing company was, as its name indicates, the manufacture and sale of beer, in the conduct of which it bought and used large quantities of malt, and the business of the Lake Shore Malting Company was the manufacture and sale of malt.   Both contracts were negotiated between a Mr. Eddy, acting for the plaintiff, and Herman Bartels, acting either for the Lake Shore Malting Company or the defendant, and both were executed at the office of the defendant.   With this statement of the features which are common to both contracts, we now pass to the consideration of those which characterize them separately.

1. It is to be observed that the order, which is the basis for the first contract, is written upon the printed letter paper of the Lake Shore Malting Company and is signed by Herman Bartels as an individual.   This order, immediately after it was received by the plaintiff, was entered upon its books under the heading "sold to H. Bartels," and the plaintiff's treasurer wrote to Bartels an acknowledgment.   On May 23rd, 1904, or about six months after the acceptance of this order, the plaintiff received some shipping directions purporting to have been signed on behalf of the defendant, and the receipt thereof was acknowledged by the plaintiff.   On the very next day after the receipt of this acknowledgment Herman Bartels sent to the plaintiff a letter written upon the letter paper of the Lake Shore Malting Company stating: "The malt ordered is to be billed to the Lake Shore Malting Company.   All malt to be ordered shipped is to be billed in that way."  Following this, the Lake Shore Malting Company directed the New York Central freight agent at Syracuse to deliver all malt consigned to it to the Bartels Brewing Company at its brewery.   There were various consignments of malt under contract one.   Some of

the bills of lading were directed to the Lake Shore Malting Company and others were directed to concerns which, the defendant now claims, were customers of the Lake Shore Malting Company. The invoices, however, seem to have been all made out to the Lake Shore Malting Company, and this discrepancy the plaintiff's cashier explains by saying that he acted upon directions received from Bartels. Whatever the facts may be with reference to this method of shipping and billing, it is apparent that a considerable quantity of the malt came into the possession of the defendant. As bearing upon the issue whether the plaintiff was dealing with the defendant or the Lake Shore Malting Company, the plaintiff was permitted to prove entries in its books showing that the malt had been charged to the defendant. The door to such self-serving declarations having thus been opened, the defendant was permitted to introduce extracts from its own books and papers and from the books and papers of the Lake Shore Malting Company to establish that the malt which the defendant received had been purchased by it from the Lake Shore Malting Company. Much evidence of this character, and much more that was competent upon the issue, is to be found in the record, but we cannot refer to it in detail without extending the discussion beyond reasonable limits. As we have concluded to affirm the judgment in so far as it relates to the first cause of action, it may be sufficient to say that upon all the evidence relating to contract one, we think the referee was justified in finding "That the said order was intended by Herman Bartels to be made for and on behalf of the Lake Shore Malting Company, * * * and the fact of such intent was communicated to plaintiff shortly after the giving of the above order, and the plaintiff acquiesced in the assignment or transfer of said contract, * * * and treated and dealt with the Lake Shore Company as the owner of and a party to said contract."

Parol evidence was competent to show who were the

parties to the transaction, for the plaintiff invoked the rule that the contract, although apparently made between the plaintiff and Herman Bartels, was in fact made between the plaintiff and the defendant. Such evidence is always admissible in an action brought to charge the real principal, and it goes without saying that it is equally open to the defendant, not named in the contract, to show that he was not the real principal. (*Higgins* v. *Senior*, 8 Mees. & W. 834, 844; *Mills* v. *Hunt*, 20 Wend. 431, 434; Story on Agency, sec. 269, and cases cited in notes.)

We, therefore, conclude that in the first cause of action the judgment must be affirmed.

2. The situation with regard to the second contract is entirely different. Here the plaintiff is seeking to charge the other party, to the contract as made, and is not attempting to hold a third person not named therein. This contract was entered into in September, 1905, nearly a year after the first one, and is signed by the defendant through its president, Herman Bartels. The rules of evidence relating to it are directly antithetical to those which apply to the first contract, under which the plaintiff has sought to charge a person not named in it, for here the suit is against the party who signed the instrument. The rules of law pertinent to this question are very simple in theory, but often difficult of application. Where a party signs a contract in his own name, even though he is acting for another, he is personally bound thereby. (*Magee* v. *Atkinson*, 2 Mees. & W. 440; *Meyer* v. *Redmond*, 205 N. Y. 478, and cases cited.) If the other party to the contract elects to hold the signer thereof, parol evidence is not admissible to release him from the obligation which he has voluntarily assumed, although it would be competent, as we have seen, to bring in a third party not named. (*Higgins* v. *Senior*, *supra*; *Mills* v. *Hunt*, *supra*; Story on Agency, *supra*.) With respect to this second contract, the referee found "That the plaintiff

knew and understood at the time the said last above order was received that it was intended by the said Bartels as a continuance of the business relations which had existed between the plaintiff and the Lake Shore Malting Company during the year 1904, for the season of 1905, and that the goods to be shipped thereunder were to be shipped to the Lake Shore Malting Company and its customers." It is evident that this finding is based upon the same evidence which was relied upon by the defendant to show that it was not a party to contract one. This evidence, although competent as to contract one, was not admissible as to contract two, for the reasons which we have suggested; and, if we disregard it, there is nothing to sustain this finding either as one of fact or law.

At this point the defendant calls to its aid the defense of *ultra vires*, and its contention is that the evidence not only fails to show that Bartels, its president, was authorized to enter into contract two, but affirmatively establishes that he was not empowered to execute it. It is a sufficient answer to this position that the defense of *ultra vires* was not pleaded by the defendant, for it is always an affirmative defense. (*Hess* v. *Sloane*, 66 App. Div. 522; affd. on opin. below, 173 N. Y. 616; *Richmond Co. Socy. P. C. C.* v. *City of New York*, 73 App. Div. 607, 610.) But beyond this, the findings of the referee indicate that he gave undue weight to the by-laws of the defendant in upholding this defense, and did not attach sufficient importance to the course of dealing under contract two. This is probably explained to some extent by the fact that both contracts were regarded as being controlled by the same rules of evidence, and that, as we have seen, was a mistake. The defendant used large quantities of malt, and Bartels was its president, assuming to make a contract which was apparently within the range of its business and the scope of his authority. The greater portion of the malt, delivered under contract two, was used by the defendant, and the rest was sent to its nominees

under circumstances which are not inconsistent with the conclusion that the defendant was the purchaser of all the malt. The plea of *ultra vires* here does not arise out of a lack of power in the defendant corporation to make the contract with which it is sought to be charged, but out of the asserted lack of authority in its president. This is a vital distinction which was very clearly stated by Judge GRAY in *Leslie* v. *Lorillard* (110 N. Y. 519, 532) where he wrote: "In suits between the corporation and strangers dealing with it, the question is whether the act is one the corporation is not authorized to perform under any circumstances; or one that it may perform for some purposes or under certain conditions. In the first case it is *ultra vires* and there can be no recovery; because the party dealing with the corporation is bound to know, from the law of its existence, that it has no power to perform it. In the second case, the issue will turn upon whether the party dealing with it is aware of the intention to perform the act for some unauthorized purpose, or whether the attendant circumstances justify its performance." As contract two was one which the defendant had power to enter into in the ordinary course of its business, the question is whether the plaintiff had any reason to suspect that the defendant, acting through its president, intended to purchase malt for an unauthorized purpose. The referee's findings do not cover this phase of the case, and the finding which he made relates solely to plaintiff's knowledge or understanding of Bartels' imputed intention to continue his course of dealing through the Lake Shore Malting Company. We cannot further pursue the discussion upon this point without anticipating or suggesting the course of another trial, and we, therefore, leave it with the observation that this defense is not available to the defendant in any event until it is properly pleaded.

Another difficulty in the case arises out of the referee's findings sustaining the defense of payment. The referee's

conclusions upon this issue are evidently founded upon the plaintiff's acceptance of the notes of the Lake Shore Malting Company in payment of the malt delivered under contract two. It appears to be the fact that the plaintiff had these notes discounted at a bank, and when they were not paid at maturity brought suit upon some of them against the Lake Shore Malting Company which was prosecuted to judgment. Action was also commenced against Bartels as indorser upon some of the notes. All this might be cogent evidence in support of the defense of payment, if it tended in any degree to connect the defendant, the party to the contract, with the transactions upon which this defense is based. But there is no such evidence in this record. The notes were those of a stranger to the contract. There was no privity between the Lake Shore Company and the defendant. So far as appears, neither acted as agent for the other. The Lake Shore Company was appearently a mere volunteer in the giving of its notes, and in these circumstances no attempted payment or satisfaction by it could inure to the benefit of the defendant. (*Atlantic Dock Co.* v. *Mayor, etc., of N. Y.,* 53 N. Y. 64; *King* v. *Barnes,* 109 id. 267, 289; *Muller* v. *Eno,* 14 id. 597.)

The appellant's brief presents many exceptions to findings and rulings which we deem it unnecessary to discuss, in view of the fact that on the second trial, under contract two, the evidence must be materially different.

The judgment of the courts below, in favor of the defendant on the first contract set forth in the first cause of action, should be affirmed; and the judgment, so far as based upon the second contract set forth in the second cause of action, should be reversed and a new trial granted, without costs in this court to either party.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, CHASE and COLLIN, JJ., concur.

Judgment accordingly.

Action No. 2.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 10, 1911, affirming a judgment in favor of defendant entered upon the report of a referee.

The action was brought to recover damages for the defendant's alleged breach of a contract under which the plaintiff was to manufacture and deliver 75,000 bushels of malt. The contract consisted of a written order purporting to have been executed by the defendant through its president, and a written acceptance thereof by the plaintiff through its treasurer. The order and acceptance are as follows:

"BARTELS BREWING COMPANY,

"SYRACUSE, N. Y., *Sept.* 28*th*, 1904.

"Annual Capacity 300,000 bbls.

"THOS. GORDON MALTING COMPANY,

"Oswego, N. Y.:

"GENTLEMEN.—You can book our order for 25000 bushels of ✗ 1 malt same as sample submitted through Mr. Eddy, price 64¢ delivered Syracuse, N. Y., terms 90 days.

"Also for 50000 bushels of ✗ 2 malt, price 61¢ delivered Syracuse terms same as above. Malt to be shipped between November 1st, 1904, and November 1st, 1905. Shipping directions will be given monthly.

"Yours very truly,

"BARTELS BREWING CO.,

"HERMAN BARTELS, *Pres.*"

"BARTELS BREWING CO.,                    3 *Oct.* '04.

"Syracuse, N. Y.:

"DEAR SIRS.— Your letter of 28 Sept. with your order for 75000 bus. Malt received and we hereby confirm it and have entered it on our books in conformity with your said letter.

"It is understood you will take delivery of a propor-

tionate quantity each month or about that.   Thanking you for the order, we are,

"Yours truly,
"THE THOS. GORDON MALTING CO.,
"per Thos. Gordon,
"*Treasr.*"

*Clarence De Witt Rogers* and *William Seton Gordon* for appellant.  (Action No. 2.)   Under the express terms of the contract the defendant was to give shipping directions monthly.   The sole duty of the plaintiff under the contract was to ship on receipt of such directions.   It was not necessary for the plaintiff to tender malt to the defendant in order to put the latter in default.   In failing to give shipping directions monthly or at all after March 28, 1905, the defendant violated the contract, and the plaintiff, being ready and willing and able to perform on its part during any month until November 1, 1905, has satisfied every condition precedent to the recovery of damages for the breach of the contract by the defendant.  (*Hinkley* v. *Pittsburg Steel Co.*, 121 U. S. 264; *Howard* v. *Daley*, 61 N. Y. 362; *Butler* v. *Butler*, 77 N. Y. 472; *Mendall* v. *Willyoung*, 42 Misc. Rep. 210; *Park* v. *Marsiglia*, 1 Den. 317; *Belle of Bourbon Co.* v. *Leffler*, 87 App. Div. 302; *Wallace* v. *Blake*, 3 N. Y. Supp. 934; *Woolf* v. *Hamburger*, 129 App. Div. 883; *Dunne* v. *Hastings Paving Co.*, 95 App. Div. 360.)   The judgment dismissing the complaint should be reversed since it is evident that substantial damages could be proved on a retrial and the plaintiff was entitled in any case to a judgment for nominal damages.  (*Thompson Houston Co.* v. *Durant, etc., Co.*, 144 N. Y. 34; *Roystone* v. *Woodbury Institute*, 67 Misc. Rep. 265; *Rollins* v. *Bowman Cycle Co.*, 96 App. Div. 365; *Hopedale El. Co.* v. *Electric, etc., Battery Co.*, 96 App. Div. 344; 184 N. Y. 356.)

*J. L. Cheney* for respondent.  (Action No. 2.)   The plaintiff is not entitled to recover against the defendant for a

1912.]            Opinion, per WERNER, J.          [206 N. Y.]

breach of the contract, for the reason that he has not proved either performance on his part, or breach on the part of the defendant, both of which it is incumbent upon him to show in order to entitle him to recover. (*Lester* v. *Jewett*, 11 N. Y. 453; *Delaware Trust Co.* v. *Calm*, 195 N. Y. 231; *Gourd* v. *Healy*, 137 App. Div. 323.) There can be no recovery for other than nominal damages, for the reason that the plaintiff has failed to prove that he has suffered any damages from such alleged breach. (*Moore* v. *Potter*, 155 N. Y. 481; *Ackerman* v. *Rubens*, 167 N. Y. 405; *Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371; *Windmuller* v. *Pope*, 107 N. Y. 674; *Atlas Portland Cement Co.* v. *Hopper*, 116 App. Div. 445; *Rosenthal* v. *Empire, etc., Co.*, 123 App. Div. 503; *Nat. C. R. Co.* v. *Schmidt*, 48 App. Div. 472; *Todd* v. *Gamble*, 148 N. Y. 382; *Snell* v. *Remington Paper Co.*, 102 App. Div. 138.)

WERNER, J.   This action was tried at the same time and before the same referee as another action between the same parties, referred to as action No. 1. The second cause of action in action No. 1 was to recover for malt which the plaintiff claims to have actually delivered to the defendant under contract two. Under this contract the plaintiff was to manufacture and deliver 75,000 bushels of malt. It claims to have delivered about 11,000 bushels, and this action is brought to recover the damages arising out of defendant's refusal to accept the remainder of about 64,000 bushels. The questions relating to contract two which are common to both actions have been discussed in the opinion written in action No. 1, and that discussion need not be repeated here.

The complaint in this action was dismissed upon the grounds: 1. That the said contract (two) was not binding upon the defendant for the reason that Herman Bartels, its president, was not authorized to make it. 2. That the plaintiff had suffered no damages. The first of these grounds is disposed of in action No. 1, and we

shall, therefore, confine ourselves to a consideration of the second.

Contract two was made in September, 1904. The order specified that the malt was to be shipped between November 1, 1904, and November 1, 1905, and it provided that "shipping directions will be given monthly." The acceptance was upon the understanding that the purchaser would "take delivery of a proportionate part each month or about that." Deliveries under this contract were commenced in December, 1904, and continued until March, 1905, when nine carloads had been delivered. On April 18, 1905, the defendant notified the plaintiff "Please do not ship any more malt until further notice, we are filled up." After that the defendant gave no further shipping instructions, although requested by the plaintiff to do so, and on November 1, 1905, there was more than 60,000 bushels of malt which remained undelivered. The referee found that the plaintiff, at all times from September, 1904, to November, 1905, "had malt in its possession of the quality called for by the second order or contract (contract two), in quantities sufficient to fulfill the terms of the contract, and fit and ready for delivery." He also found that between these dates the plaintiff notified the defendant that it had malt ready to deliver under said order, and that defendant did not at any time after said order to stop shipments notify the plaintiff again to begin shipments or to deliver the balance of the malt due under said second contract. He further found that between said dates the plaintiff was at all times "ready and willing to perform said agreement on plaintiff's part." We think the defendant was clearly in default. The subject-matter of the contract was such that it was not necessary for the plaintiff to make a physical tender. Shipments were to be made, moreover, according to directions from defendant, and when it refused to give such directions after request by the plaintiff the breach was complete.

The breach of the contract having been established, the plaintiff is entitled to recover at least nominal damages. Whether it can make out a case for substantial damages depends upon conditions which are not satisfactorily placed before us by the present record. If the defendant is correct in its contention that this is a contract for the sale and delivery of goods for which there is a recognized market, and that the market price was at all times after the breach higher than the contract price, the plaintiff's claim to substantial damages must fail; but if the contract was for the manufacture and sale of an article, not *in esse*, sold only upon order at specified seasons of the year and for which there is no general and certain market, the plaintiff would be entitled to such substantial damages as it could prove. The usual measure of damages in such a case is the contract price, less the cost of production. (*Todd* v. *Gamble*, 148 N. Y. 382; *Dillon* v. *Anderson*, 43 N. Y. 231, 237.) Since there must be a new trial, we shall not assume to decide in advance into which of these two classes the evidence may place this action.

The judgment must be reversed and a new trial granted, with costs to the appellant to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.