GEORGE R. DYER and Others, Plaintiffs, v. BROADWAY CENTRAL
BANK, Defendant.

Supreme Court, New York County, December 29, 1927.

Banks and banking.— ultra vires agreement — complaint alleging plain-
tiffs, at defendant's request, agreed to buy " for and on account of the
defendant," certain stocks, states cause of action — fact that defendant
bank exceeded its powers does not relieve it of liability — claim of ultra
vires not available — legal effect of broker's purchase of stock for
customer is same as if stock were delivered to customer and then
pledged by latter with broker as security — complaint is susceptible
of interpretation that all purchases were made pursuant to single
request and promise to pay — plaintiff will not be compelled to serve
amended complaint separately stating and numbering various causes
of action.

The complaint in this action, which alleges that plaintiffs, as members of the
New York Stock Exchange, at defendant's request and on the latter's agreement
to buy, purchased "for and on account of the defendant" certain specified
stocks, states a cause of action, notwithstanding defendant exceeded its powers
in the transaction, for, after the purchase of the stock, the contract was no longer
executory as far as defendant was concerned, and, consequently, its claim of
ultra vires is not available.

The legal effect of a broker's purchase of stock for a customer, whether the customer
buys on margin or the broker advances the entire price, is exactly the same as if
the stock were delivered to the customer and then pledged with the broker
as security for his advances.

Moreover, immediately upon plaintiffs' execution of the purchase order the
defendant became the owner of the shares purchased, and its relationship to
the plaintiffs became one of pledgor and pledgee, and defendant, having received
the benefit of the contract, cannot now repudiate the same as invalid.

The fact that the complaint does not allege that each of the various purchases
of stock referred to therein was the result of a separate request or agreement
on the part of the defendant, does not warrant the striking therefrom of said
matter on the ground that it is irrelevant, since the language of the complaint
is susceptible of the interpretation that all the various purchases were made
pursuant to a single request and promise to pay; every intendment should be
resolved in favor of the complaint on a motion of this character and, in the
absence of any showing that the defendant will in any wise be prejudiced if
the allegations complained of are allowed to remain in the complaint, the plain-
tiff will not be compelled to serve an amended complaint separately stating
and numbering the various causes of action.

MOTION to dismiss complaint for failure to allege facts sufficient
to state a cause of action; to strike out certain allegations as
irrelevant, unnecessary and tending to prejudice; or in the alterna-
tive to compel plaintiffs separately to state and number alleged
separate causes of action.

*Worcester, Williams & Saxe* [*John Godfrey Saxe* and *Edward S. Dore* of counsel], for the plaintiffs.

*Eisman, Lee, Corn & Lewine* [*Joseph J. Corn* and *David Morgulas* of counsel], for the defendant.

FRANKENTHALER, J. The complaint alleges that plaintiffs, members of the New York Stock Exchange, at defendant's request and on the latter's agreement to pay, purchased " for and on account of the defendant " certain specified stocks. The basis of the motion to dismiss the pleading for insufficiency is the claim that it appears on the face thereof that the order and the promise to pay were illegal and *ultra vires*. Assuming that the defendant did exceed its powers in the transaction referred to, the objection of *ultra vires* is, nevertheless, in my opinion, not available to it, because after the purchase of the stock by plaintiffs the contract was no longer executory as far as they were concerned. The legal effect of a broker's purchase of stock for a customer, whether the latter buys on margin or the broker advances the entire price, is exactly the same as if the stock were delivered to the customer and then pledged by the latter with the broker as security for his advances. (*Content v. Banner*, 184 N. Y. 121; *Markham v. Jaudon*, 41 id. 235.) Immediately upon the plaintiffs' execution of the purchase order the defendant became the owner of the shares purchased, and its relationship to the plaintiffs became one of pledgor and pledgee. As was said in *Mullen v. Quinlan & Co.* (195 N. Y. 109, 115): " The property in the stocks purchased by the defendant [the broker] was in the plaintiff and his assignors, and the relations between the parties were those of pledgors and pledgee." To be sure, the present plaintiffs were entitled to retain physical possession of the certificates until repaid, but the incidents of ownership, such as the right to dividends declared and to profits accruing from a rise in the market price, clearly belonged to the defendant. Indeed, a sale by the plaintiffs without proper notice to the defendant would constitute a conversion. (*Content v. Banner, supra.*) In the light of the foregoing it seems to me that their part of the contract was fully executed by plaintiffs, who not only conferred ownership of the stock upon the defendant, but even — in legal effect — delivered the physical possession of the certificates to defendant, and then accepted their return by way of pledge. It is true that in *Jemison v. Citizens' Savings Bank* (122 N. Y. 135) it was held that a purchase of cotton futures by a broker did not of itself make the contract an executed one. However, the reason for that view appears to be found in the following language (at p. 142) in which emphasis is placed upon the fact that title remained in the broker: " The

cotton had been purchased by the plaintiffs *in their own name, they taking title thereto* and holding it upon the defendant's account. *It was purchased under the rules of the Cotton Exchange of the City of New York in which the members doing business therein with other members act as principals and are liable as such.* The most that can be claimed is that they held the cotton or the contracts therefor subject to the call or order of the defendant. *There had been no delivery of any cotton or property of any kind, or transfer of any title to such property to the defendant.*" (Italics mine.) There is nothing in the complaint before me to indicate whether the rules of the Stock Exchange are similar to the rules of the Cotton Exchange referred to in the *Jemison Case (supra)*. Moreover, as LAUGHLIN, J., well pointed out in *Scandinavian Import-Export Co.* v. *Bachman* (195 App. Div. 297, 304), such rules " would not preclude the making of a contract between a customer and a broker by which as between them the broker would become the agent of the customer who would be entitled as between him and the broker to the benefit of the transactions had by the broker as principal with other brokers but for the customer." Having received the benefit of the contract, defendant cannot, under the law of this State, repudiate it as invalid. To quote from the opinion of CULLEN, Ch. J., in *Appleton* v. *Citizens' Central Nat. Bank of N. Y.* (190 N. Y. 417, 420, 421): " The law which obtains in this State and in several other jurisdictions is that where one party has received the full benefit of an *ultra vires* contract, it cannot plead the invalidity of the contract to defeat an action upon it by the other party." In so far as the motion seeks to dismiss the complaint on the theory of *ultra vires*, it must, accordingly, be denied. Indeed, the Court of Appeals has stated " that the defense of *ultra vires* * * * is always an affirmative defense." (*Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528, 538.) The same observations with regard to the execution of the contract by plaintiffs appear to be applicable to the contention that it is illegal because made by a *bank*. In the *Appleton Case (supra)* the claim was made that an agreement by a bank was in excess of its powers. Yet the court invoked the rule that one who has received the benefit of such an agreement cannot plead its invalidity to defeat an action upon it. In *American Surety Co.* v. *Philippine Nat. Bank* (245 N. Y. 116), CRANE, J., writing the opinion of the court — that case also involving an agreement by a *bank* alleged to be in excess of its powers — quoted with approval from various authorities holding that agreements of corporations, in excess of their powers, could be enforced if the corporations had received the benefit thereof. A number of the cases referred to in the opinion involved *ultra vires* agreements

on the part of banks. Indeed, there is a statement in the opinion which expressly indicates that the principle referred to is applicable to *ultra vires* agreements on the part of banks (p. 129): " Applying this rule to a national bank, the United States Supreme Court decided that it could not hold on to securities and at the same time refuse to comply with an *ultra vires* agreement. (*Logan County Nat. Bank* v. *Townsend,* 139 U. S. 67.)" Accordingly, it would seem that banks, like other corporations, cannot, after obtaining the benefits of *ultra vires* agreements, repudiate their obligations on the ground of illegality. That branch of the motion which seeks to strike from the complaint matter which is alleged to be irrelevant and unnecessary is without merit. The complaint, it should be noted, does not allege that each of the various purchases of stock referred to therein was the result of a separate request or agreement on the part of the defendant. On the contrary, according to the language of the complaint, all the various purchases were made pursuant to a single request and promise to pay. At least the complaint is susceptible of that interpretation, and every intendment should be resolved in its favor on a motion of this character. The references to purchases which have been paid for by the defendant are, therefore, necessary or at least proper in order to enable plaintiffs to set forth intelligibly the entire transaction and explain the method which they have employed in calculating the balance sued for. At any rate, there is no showing that the defendant will in anywise be prejudiced if the allegations complained of are allowed to remain in the pleading. That phase of the motion which seeks to compel the plaintiffs to serve an amended complaint separately stating and numbering the various causes of action which defendant contends it contains should also be denied. As previously observed, the complaint, indulging every reasonable inference and intendment in its favor, does not allege that each purchase was made pursuant to a separate order and agreement to pay, but, on the contrary, appears to set forth that the various purchases were made pursuant to a single request and a single agreement to pay. It follows that the complaint contains but one cause of action on a single contract. For the foregoing reasons the motion is denied in its entirety.